**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FRESENIUS KABI USA, LLC,

      *Plaintiff*,

    v.

UNITED STATES OF AMERICA *et al.*,

      *Defendants*.

Civil Action No. 25-855 (TJK)

**MEMORANDUM OPINION**

Fresenius Kabi USA, LLC is a manufacturer of injectable drug products that participates in the Medicaid Drug Rebate Program administered by the Centers for Medicare and Medicaid Services, or CMS. Through that program, it pays rebates to states based on a drug's classification and, in exchange, that drug is eligible for Medicaid coverage. In general, manufacturers pay higher rebates for "innovator" drugs than for "noninnovator"—or generic—drugs. In 2016, Fresenius Kabi petitioned CMS to reclassify nine of its drugs as noninnovators. CMS denied each request, and informed Fresenius Kabi that it could respond within a month to supplement or clarify its position—but if it did not respond, the decision would be final. Fresenius Kabi timely responded. Then it sued CMS, the Department of Health and Human Services, and relevant officials under the Administrative Procedure Act, alleging that CMS's decisions were arbitrary, capricious, and contrary to law and that CMS unreasonably delayed issuing final decisions on the requests.

Defendants move to dismiss, asserting that CMS's decisions were not final agency actions, so Fresenius Kabi lacks a cause of action, and that any delay was not unreasonable. The Court agrees that the decisions were not final agency actions, and so it will grant the motion in part. But

because the Court lacks a sufficient record to assess the reasonableness of CMS's delay, it will deny the motion as to the unreasonable-delay claim.

## I. Background

### A. Statutory and Regulatory Framework

"Medicaid is a cooperative federal-state program that provides federal funding for state medical services to the poor." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004). Congress created the Medicaid Drug Rebate Program ("MDRP") "to offset Medicaid costs incurred by the federal government and the states for outpatient drugs provided to Medicaid recipients." *Council on Radionuclides & Radiopharmaceuticals, Inc. v. Azar*, 18-cv-633 (RBW), 2019 WL 5960142, at *2 (D.D.C. Nov. 13, 2019). For a drug to be eligible for Medicaid reimbursement, the manufacturer must enter into a rebate agreement with the Department of Health and Human Services to pay rebates to states. 42 U.S.C. §§ 1396r-8(a)(1), (c)(1)(A), (c)(3)(A). The rebate rate for a drug depends on its classification as either: (1) "single source" (2) "innovator multiple source" or (3) "noninnovator multiple source"—a generic drug. *See id*. §§ 1396r-8(c)(1), (3); *id.* § 1396r-8(k)(7)(A). Rebate rates for noninnovator drugs are lower than those for single source and innovator drugs. *See id.* § 1396r-8(c). In 2016, CMS established a "narrow exception" process through which, under certain circumstances, drug manufacturers could apply to have an innovator drug treated as a noninnovator for purposes of calculating rebate liability. *See* ECF No. 1 ("Compl.") ¶ 60; *see also* 42 C.F.R. § 447.502. The process was intended "to ensure that drugs that are or were required to be marketed under an original new drug application for technical reasons would not be erroneously classified as innovators." Compl. ¶ 60 (citation omitted).

### B. Procedural Background

Fresenius Kabi is a global health care company and a manufacturer of generic, injectable

drugs. Compl. ¶ 10. In November and December 2016, Fresenius Kabi submitted requests to CMS seeking to classify nine of its drugs as noninnovator multiple source drugs under the MDRP.[1] *Id.* ¶ 143. It "supplemented and updated those requests" in January 2020. *Id.* But in a series of letters sent between January and June 2023, CMS denied Fresenius Kabi's requests as to each drug. *See* ECF No. 21-1 at 1–61.[2] The letters informed Fresenius Kabi that CMS had "decline[d] to . . . grant a narrow exception" and "den[ied] [its] request to report the drugs . . . as noninnovator multiple source . . . drugs." *Id.* at 3; *see also id.* at 10, 17, 23, 30, 37, 43, 50. CMS further advised Fresenius Kabi in each letter that "[i]f [it] ha[d] any questions or concerns" about the letter, it should "respond within 30 days . . . with any supplements to or clarifications of [its] positions in [its] request" and to "include detailed supporting documentation if available." *Id.* at 7, 14, 21, 28, 34, 41, 47, 54. Each letter also provided that "[i]f CMS does not receive any written response by 30 days, then the decision in this letter is final." *Id.*

Fresenius Kabi timely responded to CMS with its own letters challenging the agency's denial decisions. Compl. ¶ 147. For instance, Fresenius Kabi responded to CMS's denial as to five of the drugs in a letter dated June 13, 2023. *See* ECF No. 23-1 at 2–5. In that letter, Fresenius Kabi asserted that CMS's decisions were contrary to the MDRP statute, caselaw, and prior FDA

---

[1] These drugs, each bearing a unique New Drug Application code ("NDA"), are Xylocaine (NDA 006488), Lidocaine hydrochloride (NDA 017584), Bupivacaine hydrochloride (NDA 019404) ("Sensorcaine"), Indomethacin (NDA 022536), Tobramycin sulfate (NDA 050789), Argatroban (NDA 201811), Glucagon hydrochloride (NDA 201849), Moxifloxacin hydrochloride (NDA 205572), and Tigecycline (NDA 205645). *See* Compl. ¶¶ 6, 85, 150.

[2] The Court may consider CMS's letters, attached as exhibits to Defendants' motion to dismiss, *see* ECF No. 21-1, as "undisputed[ly]" "authentic[]" documents "referred to in the complaint," *Langeman v. Garland*, 88 F.4th 289, 292 (D.C. Cir. 2023) (internal quotations omitted); *see also* Compl. ¶ 147 ("In a series of letters issued in 2023, CMS rejected Fresenius Kabi's requests to classify these drugs as non-innovator, multiple source drugs."). The same is true for Fresenius Kabi's response letters discussed below. *See id.*

determinations.  *See id.*

A little over six months later, having received no further response from CMS, Fresenius Kabi notified the agency by letter that "it was awaiting a response as to the classifications of its generic injectables" and, "absent a response within two additional months, [it] would consider its requests to have been denied and final, and reserved the right to seek further relief related to those denials."  Compl. ¶ 198.  CMS responded in February 2024, informing Fresenius Kabi that its submissions were "currently under review," but that it "should not infer that CMS has reconsidered its initial decision and approved a narrow exception for its product[s] unless and until CMS issues a written decision on that reconsideration request."  *Id.* ¶ 199 & n.2.  Should "CMS's initial decision change[]," the agency added, "that decision would become the new final agency action."  *Id.* It further noted that, "[d]ue to the volume of requests and the lack of available staff, the review of these requests have resulted in a backlog."  *Id.*  In March and May 2024, Fresenius Kabi submitted "additional information and legal argument" supporting its narrow-exception requests for two of the drugs at issue here—Lidocaine and Sensorcaine.  *See* Compl. ¶¶ 154, 158, 233.  In June 2024 Fresenius Kabi again inquired about the status of its narrow-exception requests and sought "an in-person meeting to discuss the outstanding determinations for the drugs at issue."  Compl. ¶ 234. Five days later, CMS acknowledged receipt and responded: "[W]e will get back to you."  *Id.*

Eight months later, with no additional response from CMS, Fresenius Kabi filed this suit against the United States, the Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and officials in charge of these agencies.  *See generally* Compl.  It alleges that CMS's decisions declining to classify the nine injectable drugs as noninnovators were arbitrary, capricious, and contrary to law under the Administrative Procedure Act ("APA").  *See id.* ¶¶ 201–23 (Counts I and II).  In the alternative, Fresenius Kabi alleges that CMS has unreasonably

delayed resolution of the company's narrow-exception requests in violation of the APA. *Id.* ¶¶ 224–36 (Count III). Defendants move to dismiss, arguing, as to Counts I and II, that CMS's decisions were not final agency actions reviewable under the APA and, as to Count III, that any delay in resolving Fresenius Kabi's requests is reasonable given the agency's limited resources and competing priorities.

A few months after Fresenius Kabi sued, CMS reversed its earlier position and granted a narrow exception for Sensorcaine. *See* ECF No. 21-1 at 60–61. CMS has not yet responded to Fresenius Kabi as to any other drug at issue.

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face as to nudge [its] claims across the line from conceivable to plausible." *Abbas v. Foreign Pol'y Grp.*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (internal quotations omitted). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When evaluating such a motion, a court must "treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all reasonable inferences from the facts alleged." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (cleaned up).

## III.   Analysis

### A.    The Court Will Dismiss Counts I and II Because CMS's Decisions Were Not Final Agency Actions

In Counts I and II, Fresenius Kabi challenges CMS's decisions reflected in the denial letters as arbitrary, capricious, and contrary to law under the APA. Defendants argue that CMS's

decisions reflected in the denial letters were not final agency actions reviewable under that statute, and so Fresenius Kabi lacks a cause of action to pursue them.  They are right that "where there is no final agency action, a plaintiff has no cause of action under the APA." *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 138 (D.D.C. 2018).  "Thus, although the absence of final agency action would not cost [the Court its] jurisdiction," it would cost Fresenius Kabi its "APA cause of action." *Trudeau*, 456 F.3d at 188–89; *see Oryszak v. Sullivan*, 576 F.3d 522, 525 n.2 (D.C. Cir. 2009).  As explained below, the Court agrees that CMS's decisions were not final agency actions under the APA, so it will grant CMS's motion and dismiss Counts I and II.

The finality inquiry is governed by the two-prong test set forth in *Bennett v. Spear*, which states that to be final, agency action must (1) "mark the consummation of the agency's decisionmaking process" and (2) be an action "by which rights or obligations have been determined, or from which legal consequences will flow."  520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted).  The Supreme Court has instructed lower courts to "apply the finality requirement in a 'flexible' and 'pragmatic' way."  *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967)).  The CMS decisions fail *Bennett*'s first prong—they do not mark the consummation of the agency's decisionmaking process—for two reasons: they premised finality on a future, contingent event that did not occur and they permitted Fresenius Kabi to submit additional material in support of its position, thereby triggering further agency consideration that may obviate the need for judicial review. Thus, the Court need not consider *Bennett*'s second prong to conclude that CMS's decisions were not final agency actions.

First, CMS's decisions were not final because they premised finality on a future, contingent event—Fresenius Kabi's nonresponse—that did not occur.  "To mark the consummation of the

6

agency's decision making, the action must mark a definitive position, rather than being merely tentative or interlocutory." *Or. Health & Sci. Univ. v. Engels*, 24-cv-2184 (RC), 2025 WL 1707630, at \*5 (D.D.C. June 17, 2025), *appeal dismissed sub nom. Mainegeneral Med. Ctr. v. Engels*, No. 25-5297, 2025 WL 2982893 (D.C. Cir. Oct. 21, 2025) (citation modified).   When considering the first *Bennett* prong, the D.C. Circuit has looked to the relevant language of the challenged agency decision. *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012).  The Court turns to that language.

Each CMS letter stated, under the heading "Decision," that the agency "*decline*[*s*] to exercise [its] discretion to grant a narrow exception and *den*[*ies*] [Fresenius Kabi's] request to report the drugs . . . as noninnovator[s]."  ECF No. 23 at 13 (quoting ECF No. 21-1 at 3) (emphasis as quoted).  In Fresenius Kabi's view, this definitive language—which is "neither preliminary nor tentative"—shows the decisions' finality. *Id.* at 14.  But in assessing finality, the Court must consider the agency "document as a whole." *ForUsAll, Inc. v. Dep't of Lab.*, 691 F. Supp. 3d 14, 31 (D.D.C. 2023).  And that includes the letters' later paragraph advising Fresenius Kabi that, if it did not respond "with any supplements to or clarification of [its] positions" and "supporting documentation" within 30 days, "*then* the decision in this letter is final."  ECF No. 21-1 at 7, 14, 21, 28, 34, 41, 47, 54 (emphasis added).

For their part, Defendants argue that the letters "state on their faces" that the decisions "would only become final if CMS did not receive a timely written response," and, because Fresenius Kabi timely responded to each letter, it is "clearcut" that the decisions do not mark the consummation of the agency's decisionmaking process.  ECF No. 21 at 17, 19.  Fresenius Kabi disagrees, noting that "[t]he word '*only*' does not appear" in the decisions.  ECF No. 23 at 19.  Thus, Fresenius Kabi argues, "the language simply cautions that if [it] did not request reconsideration

within 30 days, it might miss the opportunity to do so." *Id.* Defendants have the better argument.

The CMS letters' use of "then" indicates that their finality was contingent on Fresenius Kabi's failure to respond within 30 days. *See Then*, Merriam Webster's Dictionary ("[A]s a necessary consequence."), https://perma.cc/MAG2-ZKXF. Agency "statements and conclusions" that are "tentative, open to further consideration, or conditional on future agency action" do not mark the consummation of the agency's decisionmaking process. *City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007). As here, finality can also depend on an action or event outside the agency's control. *See Vill. of Bensenville v. FAA*, 457 F.3d 52, 69 (D.C. Cir. 2006) (holding that an FAA letter was not "final" because it was "contingent," in part, "on congressional appropriation" and a municipality's filing of a grant application). And there is no dispute that the contingent event that would have triggered finality—Fresenius Kabi's nonresponse—did not happen. *See* Compl. ¶ 147. Rather, Fresenius Kabi responded to each letter within 30 days. *Id.* So, "by [their] own terms," CMS's letters "do[] not constitute the consummation of [CMS's] decisionmaking process." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1263 (D.C. Cir. 2018).

Fresenius Kabi dismisses this language as mere administrative "boilerplate," which, it argues, cannot render CMS's decisions nonfinal for purposes of judicial review. ECF No. 23 at 19. Not so. True, the "mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an *otherwise final* agency action nonfinal." *Sackett v. EPA*, 566 U.S. 120, 127 (2012) (emphasis added). But that argument puts the cart before the horse by assuming that CMS's decisions were final agency actions in the first place. As Defendants point out, the cases Fresenius Kabi cites to support this argument involve otherwise final agency action. *See* ECF No. 26 at 10.

Start with the Supreme Court's decision in *Sackett v. EPA*. In that case, the plaintiff

landowners challenged an order issued by the Environmental Protection Agency ("EPA") concluding that they had violated the Clean Water Act. *See Sackett*, 566 U.S. at 123. Although the order invited the plaintiffs to "engage in informal discussion of the terms and requirements of the order with the EPA and to inform the agency of any allegations therein which they believed to be inaccurate," the Court held that the order satisfied *Bennett*'s first prong and was final agency action. *Id.* at 127 (citation modified). But there, unlike here, the plaintiffs requested a hearing to challenge the agency's findings and, when EPA denied that request, the plaintiffs learned that the order was "not subject to further Agency review." *Id*. That "alone sufficiently distinguishes [CMS's Decisions] in this case from the [EPA's] enforcement order in *Sackett*." *Soundboard*, 888 F.3d at 1269. Here, by contrast, each CMS letter *disclaimed* finality if Fresenius Kabi timely responded within 30 days, which it did.

Fresenius Kabi's reliance on the D.C. Circuit's opinions in *Safari Club International v. Jewell*, *Appalachian Power Company v. EPA*, and *Friedman v. FAA* is equally misplaced. In *Safari Club*, the Circuit held that a ban on elephant trophy imports issued by the Fish and Wildlife Service constituted final agency action notwithstanding the "possibility that the Service may revise its decision based on new information." *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016) (citation modified). But there, "[t]he Service ha[d] made abundantly clear that it would grant no [import] permits for 2014." *Id.* at 1289–90. By contrast, here CMS has not closed off further consideration of Fresenius Kabi's narrow-exception requests. Rather, CMS invited Fresenius Kabi to submit further documentation in support of its position on each drug and withheld deeming its decisions final if the company did so. *Appalachian Power* is inapposite for similar reasons. In that case, the Circuit rejected the EPA's argument that its nationwide emission-source monitoring guidance was nonfinal simply because it was "subject to change." *Appalachian Power*

*Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000).  But, unlike CMS's letters here, EPA's guidance did not invite regulated entities to submit further material challenging the agency's position.  Indeed, CMS's decisions are nonfinal not just because they may change "as all laws are subject to change," *id.*, but because the agency invited Fresenius Kabi to submit material to support its positions, withheld finality if the manufacturer did so, and accepted the additional material for further consideration.

Finally, *Friedman v. FAA* does not compel a different outcome.  In that case, a pilot seeking a commercial license from the Federal Aviation Administration ("FAA") refused multiple requests to provide required medical records.  *See Friedman v. FAA*, 841 F.3d 537, 542 (D.C. Cir. 2016).  After the applicant missed multiple deadlines to submit those records, the FAA told him that, although his application "remain[ed] under consideration," the agency was "unable to proceed with [a] further determination."  *Id.*  But the agency's statement that it could not—and thus would not— reach a determination on the application was the key to the court's conclusion that the agency had given its final word on the matter: "Where an agency has clearly communicated it *will not reach a determination* on a petitioner's submission due to petitioner's recalcitrance but simultaneously refuses to deny the petitioner's submission *on those grounds*, it has engaged in final agency action."  *Id.* (emphasis added).  Here, however, CMS has not said that it cannot or will not reach a final determination on Fresenius Kabi's pending requests.[3]  To the contrary, CMS confirmed in early 2024 that it had taken Fresenius Kabi's response letters "under review" and, indeed, the

---

[3] Fresenius Kabi also cites the Supreme Court's decision in *U.S. Army Corps of Engineers v. Hawkes Company* to support its argument that CMS's decisions are final agency actions subject to this Court's review.  *See* ECF No. 23 at 17 (citing 578 U.S. 590, 598 (2016)).  But there, the Army Corps conceded that the determination at issue marked the consummation of its decision-making process and thus did not dispute that *Bennett*'s first prong had been satisfied.  *See Hawkes*, 578 U.S. at 598.

agency reversed its initial decision as to one of the drugs at issue—granting a narrow exception for Sensorcaine a few months after Fresenius Kabi filed this suit.  *See* ECF No. 21 at 24; ECF No. 21-1 at 60–61.[4]

The second reason CMS's decisions were not final is because the agency permitted Fresenius Kabi to submit additional material in support of its positions, thereby triggering ongoing agency consideration that may obviate the need for judicial review.  Indeed, that additional agency consideration has *already done so* for one of the drugs at issue.  "In assessing whether a particular agency action qualifies as final for purposes of judicial review, [the D.C. Circuit] and the Supreme Court have looked to the way in which the agency subsequently treats the challenged action."  *Sw. Airlines Co. v. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016) (collecting cases).  Relatedly, "'the extent to which [a] [party] may challenge' an action before the agency may also indicate how definitive the determination is."  *Or. Health & Sci.*, 2025 WL 1707630, at *5 (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980)).

Here, CMS invited Fresenius Kabi to submit additional materials in support of its position on each drug—which the manufacturer did.  *See* Compl. ¶¶ 154, 158, 164, 171, 178, 184, 191, 197, 233; ECF No. 23-1 at 2–5.  When an "agency has been presented with new evidence that may alter the outcome of its . . . decision, the . . . denial does not mark the consummation of the agency's decisionmaking process and the APA does not provide a vehicle for its review."  *O'Sullivan v. Dep't of Health & Hum. Servs.*, 22-cv-1189 (CRC), 2024 WL 1071045, at *5 (D.D.C. Mar. 12, 2024) (citation modified), *appeal dismissed sub nom.*, No. 24-5117, 2024 WL 4394815 (D.C. Cir. Sept. 30, 2024).  The conclusion that the agency has not yet made a final decision on

---

[4] The Court may consider this letter, attached to Defendants' motion to dismiss, because the document is of undisputed authenticity and Fresenius Kabi cites the letter to support its unreasonable-delay claim discussed below.  *See* ECF No. 23 at 8.

these narrow-exception requests (except for Sensorcaine's) is underscored by the communication between Fresenius Kabi and CMS after the manufacturer provided its additional materials. For instance, when Fresenius Kabi requested an update as to the status of its requests in early 2024, the agency referred to its decisions as "initial decision[s]," and confirmed that Fresenius Kabi's response letters and supplemental materials were "currently under review." Compl. ¶¶ 199 & n.2. Thus, except in the case of Sensorcaine, the agency's consideration of Fresenius Kabi's requests, and the supplemental materials submitted, remains "[o]ngoing," which makes CMS's decisions "non-final and judicial review premature." *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012). Thus, "all that judicial review would do at this stage is disrupt the agency's process." *Scotts Valley Band of Pomo Indians v. Burgum*, 808 F. Supp. 3d 1, 14 (D.D.C. 2025), *dismissed*, No. 25-5472, 2026 WL 230024 (D.C. Cir. Jan. 27, 2026) (citation modified).

In assessing whether CMS's decisions were final agency actions fit for judicial review, *MediNatura, Inc. v. FDA* is instructive. 998 F.3d 931 (D.C. Cir. 2021). There, the Circuit affirmed the dismissal of an APA challenge to an FDA publication because the plaintiff failed to plausibly allege that the publication marked the consummation of the agency's decisionmaking. *See generally id.* In that case, MediNatura, a distributor of homeopathic drugs, challenged an FDA "Import Alert" barring importation of the plaintiff's products. *Id.* at 937. Before issuing the alert, FDA sent MediNatura a letter "explain[ing] that it considered the Products 'unapproved new drugs' . . . that . . . could not be distributed without approval." *Id.* A few days later, FDA issued an Import Alert formally banning importation of the drugs. *Id.* MediNatura argued, much like Fresenius Kabi does here, that the Import Alert marked the consummation of the FDA's decisionmaking process because the "FDA 'unambiguously stated' that the Products [were] unapproved new drugs." *Id.* at 940. Still, the Circuit noted that, "[a]fter the addition of a product to the Import

12

Alert," MediNatura could still "submit evidence to establish the drug's admissibility" at a hearing. *Id.* at 939. Though CMS has not afforded Fresenius Kabi a hearing, what matters is that Fresenius Kabi "still enjoy[ed] an opportunity to convince the agency to change its mind" by submitting additional materials. *Id.* (citation omitted). Thus, as the *MediNatura* court noted, "treating [CMS's letter] as final agency action would not allow [CMS] 'an opportunity to apply its expertise and correct its mistakes.'" *Id.* (citation omitted).

Moreover, "[s]hould [Fresenius Kabi] succeed in convincing [CMS] that its products are [noninnovators]," that would "obviate the need for judicial review." *MediNatura*, 998 F.3d at 939 (citation omitted). Indeed, Fresenius Kabi alleges that it responded to the letters in the "hope . . . that CMS might decide, as it has previously, to reverse course and grant Fresenius Kabi the relief it seeks," and in so doing "avoid unnecessary litigation." ECF No. 23 at 20. And CMS may yet provide it that relief. To repeat, CMS changed its mind on Sensorcaine—and Fresenius Kabi has not asserted any plausible reason why CMS may not do so for the other eight drugs for which requests are still pending. In sum, because "completion of [CMS's] processes may obviate the need for judicial review" for the rest of the drugs at issue, the agency's decisions are best charac-terized as nonfinal. *DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*, 76 F.3d 1212, 1215 (D.C. Cir. 1996). To be sure, if Fresenius Kabi "is unhappy with the outcome of that process once it has ended, it may seek judicial review then." *Id.* at 1216.

In response, Fresenius Kabi argues that Section 704 of the APA forecloses any assertion that its response letters rendered CMS's decisions nonfinal. *See* Compl. ¶ 203. Not so. That section provides that

> Except as otherwise expressly required by statute, agency action otherwise final is
> final for the purposes of this section whether or not there has been presented or
> determined an application for a declaratory order, for any form of reconsideration,
> or, unless the agency otherwise requires by rule and provides that the action

13

meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.  This provision merely relieves a party from seeking reconsideration or adminis-

trative appeal of an "*otherwise final*" agency action before seeking review in district court.  *Id.*

(emphasis added); *see Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284–

85 (1987).  But for all the reasons already explained, CMS's decisions were not "otherwise final"

agency actions.  Thus, Section 704 does not aid Fresenius Kabi.[5]

## B.      The Court Will Not Dismiss Count III

In Count III, Fresenius Kabi alleges—also under the APA—that CMS has "unlawfully

withheld and unreasonably delayed agency action" by "waiting more than 8 years" to issue "a final

decision with respect to the drugs at issue in this case."  Compl. ¶ 225 (citing 5  U.S.C. §§ 555(b),

706(1)), ¶ 230.  It seeks an order directing the agency to render final decisions on its outstanding

---

[5] Even if the Court accepted Fresenius Kabi's argument that CMS's decisions were final because they marked the consummation of the agency's process, its APA challenge would still be unfit for judicial review.  That is so because its response letters would then be requests for reconsideration of otherwise final agency action—which would render its present APA challenge premature.  *See O'Sullivan*, 2024 WL 1071045, at *5 ("[R]egardless of how the []submission is characterized," what matters is that a party is "in fact seeking reconsideration and modification of the agency's prior decision, which renders that decision non-final.") (citation modified).  And "[i]f a party asks an agency to reconsider its prior decision, the request 'renders an agency's otherwise final action non-final with respect to the requesting party,' and therefore unreviewable."  *Vanda Pharms. Inc. v. FDA*, 23-cv-2812 (CRC), 2024 WL 4133623, at *6 (D.D.C. Sept. 10, 2024) (quoting *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002)); *see O'Sullivan*, 2024 WL 1071045, at *3 ("The law is 'well-established that a party may not simultaneously seek both agency reconsideration and judicial review of an agency's order.'") (quoting *Tenn. Gas Pipeline Co. v. FERC*, 9 F.3d 980, 980 (D.C. Cir. 1993) (per curiam); *see also e.g.*, *Perry v. DOE*, 20-cv-2003 (JEB), 2021 WL 289358, at *1 (D.D.C. Jan. 28, 2021) ("In now moving to dismiss, Defendants point out that [the agency] is currently reconsidering its denial decision; as a result, there is no final agency action that could undergird an Administrative Procedure Act suit.").  In this case, Section 704 would not provide Fresenius Kabi an avenue for judicial review either.  That provision "has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review . . . but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal."  *Interstate Com. Comm'n*, 482 U.S. at 284–85.

narrow-exception requests within 60 days.  *Id.* ¶¶ 225, 227; *see id.* at 53–54 (Prayer for Relief).

CMS responds that any alleged delay in resolving Fresenius Kabi's narrow-exception requests was

and is reasonable, and so the Court should dismiss this claim.  *See* ECF No. 21 at 26.  As explained

below, the Court will deny CMS's motion with respect to Count III.

The APA "imposes a general but nondiscretionary duty upon an administrative agency to

pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a

reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.*

§ 706(1)."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir.

2003).  As the parties agree, courts evaluate unreasonable-delay claims under the fact-intensive,

six-part test from *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C.

Cir. 1984) ("*TRAC*").[6]

Fresenius Kabi argues that a *TRAC* analysis is premature at the motion-to-dismiss stage

given the "fact-bound analysis" the Court must undertake—which, it insists, must include the ad-

ministrative record that Defendants have withheld.  ECF No. 23 at 25, 38.  Defendants counter that

the Court "can consider the *TRAC* factors at the motion-dismiss-stage" and—because those factors

conclusively favor them—that it should do so here and dismiss Fresenius Kabi's unreasonable-

delay claim.  ECF No. 26 at 22.  They add that the "administrative record is irrelevant to resolving

CMS's motion to dismiss."  *Id.* at 27.  On this point, the Court agrees with Fresenius Kabi.

---

[6] *TRAC* directs reviewing courts to consider: "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."  750 F.2d at 80 (citation modified).

While "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage," courts should do so only when the "record contains enough facts to evaluate the *TRAC* factors." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023) (citation modified). The Court finds that it lacks enough facts to evaluate Fresenius Kabi's unreasonable-delay claim under the *TRAC* factors. For example, whether the agency has unreasonably delayed final decisions on the drugs at issue depends, in part, on whether the agency follows a "rule of reason" in processing narrow-exception requests and whether expedited consideration of Fresenius Kabi's requests will merely bump it to the front of a queue at the expense of other manufacturers. *L'Association des Americains Accidentels v. Dep't of State*, 633 F. Supp. 3d 74, 82–85 (D.D.C. 2022). But apart from CMS's apparent "backlog" of narrow-exception requests, Compl. ¶ 234, the Court has no information about the process, method, prioritization, or workflow governing the agency's review and resolution of narrow-exception requests.[7] For this reason, consideration of Fresenius Kabi's unreasonable-delay claim is "better suited to summary judgment, where the parties can present the Court with evidence concerning," among other things, "the operation of [the agency's] queue," "conditions that affect the [agency's]"

---

[7] Indeed, although CMS claims in its motion that it "has prioritized working through its backlog of initial requests" to explain the delay in processing Fresenius Kabi's "reconsideration requests," ECF No. 21 at 37, the Court is unaware of anything that it can take judicial notice of to support that assertion. Defendants assert that the complaint and other "judicially noticeable sources . . . support [its] assertion [of] . . . a backlog of pending requests." ECF No. 26 at 24. But none of these sources say anything about CMS's alleged prioritization of initial requests over "reconsideration requests" because of that backlog, ECF No. 21 at 37. Moreover, the Court is unaware of any authority suggesting that the presence of a backlog itself establishes that the agency has followed a rule of reason. Rather, some courts have held that "a backlog . . . does not by itself show, as a matter of law, that the [agency's] delay in processing plaintiffs' [requests] is reasonable to prevail on a motion to dismiss." *Qijuan Li v. Chertoff*, 07-cv-50, 2007 WL 2123740, at *3 (D. Neb. July 19, 2007); *see also Fu v. Gonzales*, 07-cv-207, 2007 WL 1742376, at *4 (N.D. Cal. May 22, 2007). Finally, CMS's reversal on Sensorcaine undermines, to some extent, its own claim that it has prioritized its backlog of initial requests. *See* ECF No. 23 at 8.

16

processing of such requests, and the way in which the agency prioritizes those requests.  *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 19 (D.D.C. 2022).[8]

## IV.    Conclusion

For all these reasons, the Court will grant Defendants' motion to dismiss as to Counts I and II and dismiss them for failure to state a claim.  But it will deny the motion to dismiss as to Count III.  A separate order shall issue.[9]

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 31, 2026

---

[8] The Court excuses Defendants' obligation to file a list of the contents of the administrative record under Local Civil Rule 7(n)(1) for purposes of filing the instant motion to dismiss only. The Court did not need the administrative record to conclude that CMS's denials were not final agency actions with respect to Counts I and II, and for the reasons explained above, it anticipates relying on the administrative record to resolve any forthcoming summary judgment motions on Count III.

[9] Fresenius Kabi consents to the dismissal of all counts as to Sensorcaine, given CMS's decision to grant Fresenius Kabi a narrow exception for that drug after this suit was filed.  *See* ECF No. 23 at 8 n.1.  Thus, the Court's order will also reflect the dismissal of the part of Count III that alleges a delay in processing the Sensorcaine request.